

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **MASSACHUSETTS BAY** ] | |
| **INSURANCE COMPANY, et al.,** ] | |
| ] | |
| **Plaintiffs,** ] | |
| ] | |
| **v.** ] | **Case No.: 2:22-cv-01236-ACA** |
| ] | |
| **SAMANTHA KENDRA DENISE** ] | |
| **ROBINSON, et al.,** ] | |
| ] | |
| **Defendants.** ] | |

## MEMORANDUM OPINION AND ORDER

Defendant Samantha Kendra Denise Robinson caused a serious car accident

resulting in injuries to her passenger. The passenger sued Ms. Robinson in state court

and her employer's insurer filed a lawsuit in this court to determine coverage. The

parties in this case agree that coverage depends on whether Ms. Robinson owned the

car she was driving when she caused the accident. The plaintiffs say Ms. Robinson

was driving her own car, neither defendant disputes that Ms. Robinson was driving

her own car, and a state court previously found that Ms. Robinson was driving her

own car (though it later vacated its order). Easy, right? Here is the wrinkle: this case

is governed by Tennessee law, which requires the court to rely solely on the facts

pleaded in the state court complaint, and that complaint does not allege

Ms. Robinson owned the car she was driving. So despite the undisputed facts, the court must deny the plaintiffs relief.

## I.     BACKGROUND

Although the defendants do not oppose Plaintiffs Massachusetts Bay Insurance Company and Hanover Insurance Company's (collectively, "the Insurers") motion for summary judgment, the court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101–02 (11th Cir. 2004). The court has therefore "review[ed] all of the evidentiary materials submitted in support of the motion for summary judgment." *Id.* Because the Insurers seek a declaratory judgment about their duty to defend Ms. Robinson, and Tennessee law mandates that the duty to defend is analyzed based on the allegations in the underlying lawsuit, *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007), the court will first describe the state court complaint and proceedings before setting out the evidence the Insurers presented in this case.

### 1.  The State Court Lawsuit

In 2019, Wallace Williams filed a lawsuit against Ms. Robinson and her employer, Elect Home Care. (Doc. 33-1). He alleged that he had hired Elect Home Care "to assist him with everyday needs including, but not limited to, transportation

2

services." (*Id.* at 3 ¶ 5). Ms. Robinson, "an employee and/or agent" of Elect Home Care, was driving Mr. Williams "within the course and scope of her employment and/or agency" when "a collision occurred with the passenger side of Ms. Robinson's vehicle," injuring him. (*Id.* at 4 ¶¶ 6–11). According to Mr. Williams, Elect Home Care "had the authority to supervise the maintenance, operation, service and repair of the subject vehicle" but failed to do so. (*Id.* at 8 ¶¶ 27–28).

Neither Ms. Robinson nor Elect Home Care defended the state court case and the state court entered a default judgment against them. (*See* doc. 1-2 at 5). The state court, in granting default judgment, found that Ms. Robinson was driving her own car when the accident occurred. (Doc. 1-6 at 3). The court entered an award of $800,000 in compensatory damages and $1,200,000 in punitive damages against Ms. Robinson and Elect Home Care. (*Id.* at 7). On Ms. Robinson's motion, the state court later set aside the default judgment against her. (Doc. 1-8 at 2). After Mr. Williams died, Sherita Armstrong, as administrator ad litem, was substituted as the plaintiff. (Doc. 33-3 at 2). The state court case remains pending and Hanover is providing Ms. Robinson a defense subject to a reservation of rights. (Doc. 1 at 6 ¶ 28).

2. Evidence in This Case

The Insurers filed this complaint for declaratory judgment against Ms. Robinson and Ms. Armstrong, seeking a declaration that they owe no duty to defend or indemnify Ms. Robinson. (Doc. 1 at 7–32). In the complaint, the Insurers assert that Mr. Williams's state court lawsuit alleges he "was a passenger in a motor vehicle owned and driven by Robinson." (*Id.* at 4 ¶ 15, 12 ¶ 45). Ms. Robinson has not filed an answer to the complaint, but Ms. Armstrong has. (Doc. 31). Ms. Armstrong's answer admits that Mr. Williams's state court complaint alleges Ms. Robinson owned the car she was driving the day of the accident. (Doc. 31 at 2 ¶ 15, 5 ¶ 45).

In addition to the complaint and Ms. Armstrong's answer, the Insurers presented the court with evidence about Ms. Robinson's car registration (doc. 33-4) and the two insurance policies (docs. 33-5, 33-6).

The evidence about Ms. Robinson's car registration shows that she owned a 2003 Ford Expedition SUV at the time of the accident. (Doc. 33-4 at 2–5). The state court complaint does not allege the type of car involved in the accident. (*See generally* doc. 33-1). The Insurers' motion for summary judgment asserts, based on Ms. Robinson's car registration, that she was driving the Ford Expedition when she had the accident. (Doc. 34 at 3 ¶ 7). In the court's independent review of the record, the only indication of the car involved in the accident comes from the state court's

order granting default judgment, in which it found that Ms. Robinson was driving her own car. (Doc. 1-6 at 3). The state court, however, later set that order aside. (Doc. 1-8 at 2). As a result, the court accepts as undisputed the fact that Ms. Robinson owned a 2003 Ford Expedition SUV, but it cannot accept the Insurers' unsupported assertion that the 2003 Ford Expedition SUV was the car involved in the accident. *See* Fed. R. Civ. P. 56(c)(1).

The two insurance policies are a commercial lines policy issued by Massachusetts Bay (doc. 33-5) and an excess/umbrella policy issued by Hanover (doc. 33-6). The commercial lines policy contains a general liability coverage ("CGL") form (doc. 33-5 at 164–79) and a business auto coverage form (*id.* at 204–15). The excess/umbrella policy contains two independent insurance agreements. (*See* doc. 33-6 at 13). Coverage A (the excess policy) provides coverage in excess of the commercial lines policy. (*Id.* at 5, 13). Coverage B (the umbrella policy) provides coverage for occurrences not covered by the commercial lines policy or Coverage A. (*Id.* at 13–14). The court will describe the provisions of each policy in more detail below.

## II.    DISCUSSION

The Insurers move for summary judgment on their claim that they owe Ms. Robinson no duty to defend because: (1) the CGL form of the commercial lines policy excludes coverage for liability arising out of the use of an automobile; (2) the

business auto form of the commercial lines policy defines an insured to exclude employees driving their own autos; (3) Coverage A of the excess/umbrella policy provides a duty to defend only if the underlying insurance provides such a duty; and (4) Coverage B of the excess/umbrella policy provides an exclusion for liability arising out of the use of an auto. (Doc. 34 at 12–18). Insurers also seek reconsideration of the court's dismissal of the duty to indemnify claim as unripe. (*Id.* at 18–21). The court will address the motion for summary judgment first, followed by the motion for reconsideration.

    <u>1.</u>  <u>Motion for Summary Judgment</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *5800 SW 74th Ave.*, 363 F.3d at 1101.

The court previously found that Tennessee law governs the coverage questions in this case. (Doc. 30 at 8). Tennessee law mandates that a court determining whether an insurer has a duty to defend may look only at "the allegations contained in the underlying complaint." *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007) ("[W]hether a duty to defend arises depends solely on the allegations contained in the underlying

complaint."); *see also St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn.1994). Moreover, "[a]ny doubt as to whether the claimant has stated a cause of action within the coverage of the policy is resolved in favor of the insured." *Travelers Indem. Co. of Am.*, 216 S.W.3d at 305. In *Travelers*, the Tennessee Supreme Court cited with approval a Tennessee Court of Appeals decision holding that "in case of doubt as to whether or not the allegations of the complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor." *Dempster Bros. v. U.S. Fid. & Guar. Co.*, 388 S.W.2d 153, 156 (Tenn. Ct. App. 1964). With that legal backdrop in mind, the court will address each of the Insurers' arguments about their duty to defend Ms. Robinson.

### a. The CGL Form of the Commercial Lines Policy

The CGL form of the commercial lines policy provides that it "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Doc. 33-5 at 164). It further provides that it has "the right and duty to defend the insured against any 'suit' seeking those damages," but it has "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (*Id.*). "Insureds" under the policy include the named insured's "employees . . . but only for acts within the scope of their employment . . .

or while performing duties related to the conduct of [the company's] business." (*Id.* at 172–73). Massachusetts Bay concedes for purposes of summary judgment that Ms. Robinson was an "insured" under that provision. (*See* doc. 34 at 13).

However, the CGL form excludes "'[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation." (Doc. 33-5 at 167). An "auto" means "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads." (*Id.* at 176). The state court complaint expressly alleges that Ms. Robinson was driving a vehicle at the time of the accident (doc. 33-1 at 4 ¶¶ 8–10), so Massachusetts Bay owes no duty to defend Ms. Robinson under the CGL form. This is not the end of the inquiry, though, because the commercial lines policy also includes a business auto coverage form, which the court must address before it can rule on whether Massachusetts Bay has a duty to defend Ms. Robinson. (Doc. 33-5 at 204–15).

### b. *The Business Auto Form of the Commercial Lines Policy*

The business auto coverage form provides that Massachusetts Bay "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (*Id.* at 205). Massachusetts Bay also has "the right and duty to defend any 'insured' against a

'suit' asking for such damages," but "no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' . . . to which this insurance does not apply." (*Id.*).

Massachusetts Bay contends that Ms. Robinson does not qualify as an "insured" under the business auto coverage form. (Doc. 34 at 15–16). "Insured" includes the named insured (here, Elect Home Care) and "[a]nyone else while using with [Elect Home Care's] permission a covered 'auto' [Elect Home Care] own[s], hire[s] or borrow[s] except . . . [Elect Home Care's] 'employee' if the covered 'auto' is owned by that 'employee.'"" (*Id.* at 205–06). The business auto coverage form has the same definitions as the CGL form for the terms "auto" and "employee." (*Compare id.* at 212–15, *with id.* at 176–77, 179).

Massachusetts Bay asserts that the state court complaint alleges Ms. Robinson was driving her own car, so she cannot be an "insured." (Doc. 34 at 15–16). The court cannot accept that contention. The state court complaint alleges only that: "As Ms. Robinson made her left turn, she failed to yield the right-of-way to an oncoming vehicle on Alabama Highway 79, and a collision occurred with the passenger side of Ms. Robinson's vehicle being struck by [sic] on passenger side." (Doc. 33-1 at 4 ¶ 10). One reasonable inference to be drawn from the phrase "Ms. Robinson's vehicle" is that Ms. Robinson owned the car; another is that it was the car Ms. Robinson was driving. Under Tennessee law, the court cannot rest on the

9

inference that would deny coverage. *See Travelers Indem. Co. of Am.*, 216 S.W.3d at 305; *Dempster Bros.*, 388 S.W.2d at 156.

Moreover, the state court complaint also alleges that Ms. Robinson was driving the car as an employee of Elect Home Care, which Mr. Williams had hired to provide, among other things, transportation services. (Doc. 33-1 at 3 ¶ 5, 4 ¶ 7). The complaint further alleges that Elect Home Care "had the authority to supervise the maintenance, operation, service and repair of the subject vehicle." (*Id.* at 8 ¶ 27). Nothing in the allegations preclude the possibility that Ms. Robinson was driving a car provided by Elect Home Care, which might have been covered under the insurance policies. And that is the standard the court must use in judging whether the allegations support the Insurers' duty to defend. *See Travelers Indem. Co. of Am.*, 216 S.W.3d at 305; *Dempster Bros.*, 388 S.W.2d at 156.

The court acknowledges that this result is counterintuitive. The state court complaint does not explicitly allege Ms. Robinson was driving a covered car; it is silent about the ownership of the vehicle. (*See* doc. 33-1 at 4 ¶ 10). Ms. Robinson has not denied the Insurers' assertion that the state court complaint alleges she was driving her own car. Ms. Armstrong—the personal representative of Mr. Williams's estate—has affirmatively admitted that assertion. (Doc. 31 at 2 ¶ 10, 5 ¶ 45). The state court, in its now-vacated default judgment, found as fact that Ms. Robinson was driving her own car at the time of the accident. (Doc. 1-6 at 3). No party now

10

argues that Ms. Robinson was not driving her own car—indeed, neither Ms. Robinson nor Ms. Armstrong have opposed the entry of summary judgment. Nevertheless, Eleventh Circuit law is clear that the court must make an independent evaluation of whether entry of summary judgment is correct. *See 5800 SW 74th Ave.*, 363 F.3d at 1101. And where there is any ambiguity or lack of clarity in the underlying complaint, Tennessee law requires the court to resolve all doubts "in favor of the insured." *Travelers Indem. Co. of Am.*, 216 S.W.3d at 305. The court cannot hold, as a matter of law, that the state court complaint affirmatively alleges a fact it actually leaves unstated.

The Insurers present some evidence about Ms. Robinson's ownership of the car. (*See* doc. 34 ¶¶ 6–7). But the court cannot look at evidence outside the state court complaint for clarification of the allegations. This court, sitting in diversity, "must follow the decisions of the state's highest court, and in the absence of such decisions on an issue, must adhere to the decisions of the state's intermediate appellate courts unless there is some persuasive indication that the state's highest court would decide the issue otherwise." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982). The Tennessee Supreme Court has, for many years and in multiple cases, clearly held that "the obligation of a liability insurance company to defend an action brought against the insured by a third party is to be determined *solely* by the allegations contained in the complaint in that action . . . [T]he pleading

11

test for determination of the duty to defend is based exclusively on the facts as *alleged* rather than on the facts as they actually are." *St. Paul Fire & Marine Ins. Co.*, 879 S.W.2d at 835 (quotation marks omitted); *see also Clark v. Sputniks, LLC*, 368 S.W.3d 431, 439 (Tenn. 2012); *Travelers Indem. Co. of Am.*, 216 S.W.3d at 305; *First Nat. Bank in Bristol v. S.C. Ins. Co. of Columbia*, 341 S.W.2d 569, 523 (Tenn. 1960) (rejecting the insureds' contention "that the insurer is obligated to go beyond the pleadings stated by the plaintiff in order to determine its liability to defend its suit against its named insured" and instead holding that the insurer makes its determination solely by reference to the allegations in the underlying complaint).

The court has located only three Tennessee cases, all from the Tennessee Court of Appeals, in which that Court considered extrinsic evidence to resolve ambiguities in a complaint where an insurer disputes its duty to defend. *Lafayette Ins. Co. v. Roberts*, 2013 WL 3961173, at \*5 (Tenn. Ct. App. July 31, 2013) ("Because the . . . policy arguably covered the claims asserted by [the plaintiff in the underlying case against the insured], Insurer had a duty to defend until it established that the claims were not covered."); *Erie Ins. Exch. v. Columbia Nat'l Ins. Co.*, 2013 WL 395982, at \*7 (Tenn. Ct. App. Jan. 30, 2013) ("An insurer's duty to defend is triggered when its policy arguably, as opposed to distinctly, covers the claims being made, and continues until the facts and the law establish that the claimed loss is not

covered.") (citations omitted); *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 11 (Tenn. Ct. App. 1998).

Those three decisions do not persuade the court that the Tennessee Supreme Court would follow the same rule. *See Flintkote Co.*, 678 F.2d at 945. The two more recent opinions are unpublished and non-binding. *See In re Adoption of E.N.R.*, 42 S.W.3d 26, 31 n.2 (Tenn. 2001) (explaining that, under Tennessee law, unpublished opinions are "non-binding persuasive authority"). Both of them ultimately rely on the older opinion. *See Lafayette Ins. Co.*, 2013 WL 3961173, at *5 (citing *Erie Ins. Exchange*); *Erie Ins. Exchange*, 2013 WL 395982, at *7 (citing *Standard Fire Ins. Co.*). But the older opinion was not about Tennessee law; it was about Kentucky law. *Standard Fire Ins. Co.*, 972 S.W.2d at 5.

In light of the Tennessee Supreme Court's clear, repeated, and longstanding instruction that an insurer's duty to defend arises "solely" from "the allegations contained in the underlying complaint," this court finds that it cannot consider the evidence the Insurers have presented about Ms. Robinson's ownership of the car involved in the accident. *See Travelers Indem. Co. of Am.*, 216 S.W.3d at 305; *St. Paul Fire & Marine Ins. Co.*, 879 S.W.2d at 835. And because the allegations in the state court complaint are unclear about ownership of the car, the court is required to construe them in favor of coverage. *See Travelers Indem. Co. of Am.*, 216 S.W.3d

at 305. The court must, therefore, **DENY** Massachusetts Bay's motion for summary judgment as to its duty to defend under the commercial lines policy.

### c.  *Coverage A of the Excess/Umbrella Policy*

Elect Home Care had a second insurance policy relevant to this dispute: the excess/umbrella policy. (Doc. 33-6). Coverage A of this policy insures "sums in excess of the 'underlying insurance' which the insured becomes legally obligated to pay as damages, provided . . . [s]uch damages are covered by 'underlying insurance.'" (*Id.* at 13). "Underlying insurance" includes the Massachusetts Bay commercial lines policy's business auto coverage form. (*Id.* at 5). Coverage A provides the insurer "the right and duty to defend the insured against any 'suit' seeking damages to which this insurance applies. If the 'underlying insurer' defends a 'suit' even if such 'suit' is groundless, false or fraudulent, we will also defend such a 'suit.'" (*Id.* at 14). But the insurer has "no duty to defend any person or organization against any claim or 'suit' . . . [t]o which this insurance does not apply." (*Id.*).

Hanover contends that it owes Ms. Robinson no duty to defend because Massachusetts Bay owes her no duty to defend under the commercial lines policy. (Doc. 34 at 16–17). But, as explained above, the allegations in the underlying complaint do not exclude coverage. Accordingly, the court must **DENY** the motion for summary judgment with respect to Hanover's duty to defend Ms. Robinson under Coverage A of the excess/umbrella policy.

### d. *Coverage B of the Excess/Umbrella Policy*

Coverage B of the excess/umbrella policy provides coverage for "sums in excess of the 'retained limit' shown in the Declarations which the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . caused by an 'occurrence'," subject to certain limitations not relevant here. (Doc. 33-6 at 13). Coverage B gives the insurer "the right and duty to defend the insured against any 'suit' because of 'bodily injury', 'property damage', 'personal injury' or 'advertising injury' to which this insurance applies, even if such 'suit' is groundless, false or fraudulent." (*Id.* at 15). The insurer has "no duty to defend any person or organization against any claim or 'suit' . . . [t]o which this insurance does not apply." (*Id.* at 15).

Like the CGL form of the commercial lines policy, Coverage B excludes coverage for "[a]ny liability or expense arising out of the ownership, maintenance, operation, use, entrustment to others, or loading or unloading of any . . . 'Auto.'" (*Id.* at 21). "Auto" has substantially the same definition as the commercial lines policy. (*Compare id.* at 26–27. *with* doc. 33-5 at 176, 212–15). The underlying state court complaint clearly alleges that Ms. Robinson was operating an auto when she caused the accident. (Doc. 33-1 at 4 ¶¶ 8–10). Accordingly, Hanover owes Ms. Robinson no duty to defend under Coverage B. But because Coverage A does

require that Hanover provide a defense to Ms. Robinson, this cannot be the basis of summary judgment in Hanover's favor.

### 2. Motion for Reconsideration

Earlier in this case, the court dismissed the Insurers' request for a declaration that they owe no duty to indemnify Ms. Robinson on the ground that, because the state court action remains pending, the duty to indemnify is not yet ripe. (Doc. 30 at 14–16). The Insurers move for reconsideration of that dismissal on the grounds that (1) there is no dispute that Ms. Robinson owns the car involved in the accident, precluding coverage; and (2) having no duty to defend means the Insurers can have no duty to indemnify. (Doc. 34 at 18–21). Neither argument warrants the court's reconsideration of its dismissal of the duty to indemnify claim as unripe.

First, although the Insurers state that there is no dispute that Ms. Robinson owns the car involved in the accident, the Insurers have not actually presented any evidence to this court about what car was involved in the accident. Because that fact is not adequately supported, *see* Fed. R. Civ. P. 56(c)(1), reconsideration to take that fact into account would be futile.

Second, even if the court could rely on the Insurers' unsupported (but undisputed) assertion that Ms. Robinson owned the car involved in the accident, the Eleventh Circuit's binding precedent holds that an insurer's request for a declaration about its duty to indemnify is not ripe until a judgment has been entered against the

insured. *See Am. Fid. & Cas. Co. v. Pa. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960);[1] *see also id.* at 457–58 ("The damage suits had never been tried. No one had yet paid or become legally liable to pay. Whether anything will be paid or be legally payable, no one, on this record, yet knows."); *Allstate Ins. Co. v. Emps. Liab. Assur. Corp.*, 445 F.2d 1278, 1281 (5th Cir. 1971) (explaining that *American Fidelity* held "that no action for declaratory relief will lie to establish an insurer's liability in a policy clause contest . . . until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never materialize"). Accordingly, the court **DENIES** the motion for reconsideration.

## III.   CONCLUSION

The court **DENIES** the Insurers' motion for summary judgment and motion for reconsideration.

**DONE** and **ORDERED** this November 13, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.